267 B.R. 625 (2001)
Betty MERRITT, Debtor.
Renee Hanrahan, Plaintiff,
v.
Triad Financial Corporation and Betty Merritt, Defendants.
Bankruptcy No. 00-02481-C. Adversary No. 00-9231-C.
United States Bankruptcy Court, N.D. Iowa.
August 27, 2001.
David Nadler, Cedar Rapids, IA, for Debtor.
Eric W. Lam, Cedar Rapids, IA, for Plaintiff Renee K. Hanrahan Trustee.
Wesley Huisinga, Cedar Rapids, IA, for Defendant Triad Financial Corporation.

ORDER RE SUMMARY JUDGMENT
PAUL J. KILBURG, Chief Judge.
This matter came before the undersigned on July 5, 2001 pursuant to assignment. Plaintiff Trustee Rene Hanrahan is represented by attorney Eric Lam. Defendant Triad Financial Corp. is represented by attorney Wesley Huisinga. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

STATEMENT OF FACT
Trustee's complaint asserts Triad's lien on Debtor's vehicle was not properly perfected under the Iowa Code. She seeks a *626 determination that the lien is void and unenforceable and requests avoidance of the lien under § 544. The parties filed cross-motions for summary judgment on the issue of the validity of Triad's lien raised in Count II of Trustee's complaint.
Pat McGrath Chevyland, an Iowa auto dealer, purchased a 1996 Nissan Quest from Onyx Acceptance Corp on February 4, 2000, receiving assignment of Illinois title. Onyx received it by repossession as lienholder from the Illinois owner, Joe Simmons. Onyx's Affidavit of Repossession shows McGrath as purchaser.
Debtor purchased the auto and entered into a security agreement with McGrath on February 14, 2000. At that time, Debtor signed the back of the vehicle's Illinois title as purchaser as well as an Iowa Application for Certificate of Title and/or Registration for a Vehicle. This application states Triad Financial Corp. holds a first security interest. Trustee asserts Triad's lien is invalid because it was not noted on the certificate of title within 30 days of February 14, 2000.
McGrath applied for Iowa title in its own name on March 31, 2000. It received the certificate of title from the Linn County Treasurer on April 5, 2000 with no lienholder noted. McGrath then applied for title in Debtor's name, with Triad noted as lienholder. The final Iowa certificate of title, in Debtor's name and with Triad's lien noted, was issued April 25, 2000.
Triad asserts the lien was properly perfected on the new Iowa title in Debtor's name even though more than 30 days had elapsed after Debtor purchased the vehicle and entered into the security agreement on February 14. The lien was noted on the title less than 30 days after the initial Iowa certificate of title was issued in McGrath's name on April 5, 2000. Triad maintains the Linn County, Iowa Treasurer does not accept an assignment of the Illinois title in these circumstances because of Onyx's repossession. Therefore, McGrath applied for Iowa title in its own name prior to title being transferred to Debtor's name with Triad noted as lienholder.
Triad submits an Affidavit of Sharon Gonzalez. She is a Motor Vehicle Deputy in the office of the Linn County Treasurer. Ms. Gonzalez states McGrath could not simply reassign title to Debtor, but instead had to obtain Iowa title in its own name first. This is apparently based on Iowa Code sec. 321.47 concerning ownership of vehicles acquired by operation of law through repossession.
Trustee moved to strike Ms. Gonzalez' Affidavit. She asserts the Affidavit improperly and incorrectly interprets the law. The Court declines to strike the Affidavit. The Court likewise declines to accept it as a definitive statement of the law. Ms. Gonzalez is apparently merely setting out the procedure her office follows when repossession occurs. The Court will consider her Affidavit in that context.

CONCLUSIONS OF LAW
In In re Lemker, No. 97-00628S, slip op. at 6 (Bankr.N.D. Iowa June 18, 1997) (Edmonds, J.), this Court held that a bank's security interest was void and unenforceable against the debtor where the bank failed to perfect its interest within the time allowed under Iowa law. Iowa Code sec. 321.50(6) states if a creditor fails to note a security interest on a vehicle certificate of title within 30 days, the security interest is void and unenforceable. Thus, a secured creditor has a limited time within which to perfect its lien on the vehicle. Lemker, No. 97-00628S, slip op. at 6. When a creditor fails to perfect its lien within this limited time, the lien is void. Id.
*627 The parties dispute when the sec. 321.50(6) 30-day deadline expired in this case. That section states, in part:
For purposes of determining the commencement date of the thirty-day period provided by this subsection, it shall be presumed that the purported security interest holder received the certificate of title on the date of the creation of the holder's purported security interest in the vehicle or the date of the issuance of the certificate of title, whichever is the latter.
Iowa Code § 321.50(6). Trustee asserts Triad's lien is unenforceable because it failed to note the lien on the title within 30 days after Debtor signed the security agreement creating Triad's purported security interest on February 14, 2000. Triad asserts the 30-day period began when the first Iowa certificate of title was issued on April 5, 2000. At the time Debtor signed the security agreement, no Iowa certificate of title had been issued for the vehicle. The vehicle had an Illinois title.
The Iowa courts have not published any cases considering similar issues. In Lemker, No. 97-00628S, slip op. at 1, the lienholder noted its lien on the debtor's vehicle title a week after the debtor filed the Chapter 7 petition, and more than 30 days after the security interest was created. The court allowed the trustee to avoid the lien under § 544, citing section 321.50(6). In this case, Triad's lien was noted on the title months prior to the commencement of Debtor's Chapter 7 case on September 28, 2000. Thus, at the time Debtor filed her Chapter 7 petition, Triad's lien, which was noted on the title, was purportedly perfected but the lien's enforceability is arguable based on the language of sec. 321.50(6).
Iowa Code section 321.48(2) sets out procedures for dealers who acquire a foreign registered vehicle for resale. It states the dealer shall apply for title within 15 days after the vehicle comes into Iowa. Alternatively, the statute states:
However, a dealer acquiring a vehicle registered in another state which permits Iowa dealers to reassign that state's certificates of title shall not be required to obtain a new registration or a new certificate of title and upon transferring title or interest to another person shall execute an assignment upon the certificate of title for the vehicle to the person to whom the transfer is made and deliver the assigned certificate of title to the person.
Iowa Code § 321.48(2).
McGrath, an Iowa dealer, did not apply for title within 15 days after it acquired the vehicle from Onyx in Illinois on February 4, 2000. Although McGrath obtained Debtor's signature on the back of the Illinois certificate of title, it did not transfer title to her under the alternative procedure set out in section 321.48(2), assignment of another state's certificate of title. The Court notes that section 321.48(4) states: "Nothing in this section shall be construed to prohibit a dealer from obtaining a new certificate of title or new registration in the same manner as other purchasers."
McGrath applied for title in its own name 46 days after Debtor's purchase, following the procedure set out in section 321.47. This is the procedure Ms. Gonzalez states would be required by the Linn County Treasurer in these circumstances because of Onyx' Illinois repossession of the vehicle.
Triad asserts McGrath retitled the vehicle in the only way acceptable under the Iowa Code and to the Linn County Treasurer. Because McGrath acquired the vehicle after repossession by Onyx in Illinois, it followed the procedures required under Iowa Code section 321.47 to receive an *628 Iowa title. This section states that "[i]f ownership of a vehicle is transferred by operation of law . . . when . . . repossession is had upon default in performance of the terms of a security agreement", the county treasurer may issue a certificate of title upon presentation of satisfactory proof of ownership and right of possession to the vehicle. Iowa Code § 321.47. The Iowa Administrative Code r. 761-400.4(6) and r. 761-400.22 indicate that a foreclosure sale affidavit is the proper documentation of ownership and the right to possession under section 321.47 in the case of repossession of a vehicle. Triad postulates that it followed this procedure because it was the correct procedure in these circumstances and thus, the 30-day period of sec. 321.50(6) commences when it received the new Iowa title on April 5, 2000.
Trustee asserts Illinois permits Iowa dealers to reassign Illinois certificates of title upon resale under sec. 321.48(2). She cites 625 Ill. Comp. Stat 5/3-113 and 5/1-115 as support for this assertion. Sec. 3-113 allows a dealer to transfer a vehicle by assignment of the title. Sec. 1-115 defines "dealer" broadly as "Every person engaged in the business of acquiring or disposing of vehicles or their essential parts and who has an established place of business for such purpose." Trustee argues this indicates Illinois permits Iowa dealers to reassign Illinois titles because the definition of "dealer" is not limited to dealers within the state of Illinois. Trustee postulates that, as McGrath could have reassigned the Illinois title to Debtor on the date she entered into the security agreement, that is the date the 30-day deadline in section 321.50(6) commences.
The Court has extensively reviewed Iowa's motor vehicle laws regarding titling of vehicles. It appears there are several different procedures generally applicable to dealers titling foreign vehicles in Iowa. McGrath chose the section 321.47 procedure because of Onyx's repossession in Illinois. Apparently, this was the method that would be required by the Linn County Treasurer's office in these circumstances.
The problem in this case is that McGrath waited 46 days after Debtor's purchase of the vehicle to start the process of applying for an Iowa certificate of title. This delay is improper under the Iowa Code. Under section 321.48, a dealer's application for title of a foreign registered vehicle "shall be made within fifteen days after the vehicle comes within the border of the state." Section 321.25 also sets out time limits for dealers to apply for registration and title. It states: "The dealer shall forward the application [for title] to the county treasurer or state office within fifteen days from the date of the delivery of the vehicle."[1] Further, a buyer may operate a newly purchased vehicle with a temporary card bearing the words "registration applied for" for forty-five days. Iowa Code § 321.25. The Iowa Supreme Court has stated: "Section 321.25 does not suggest that sellers forward applications for registration and title to the county treasurer within fifteen days of purchase. It requires them to do so." Tim O'Neill Chevrolet v. Forristall, 551 N.W.2d 611, 618 (Iowa 1996) (emphasis in original). The court found a dealer's failure to comply with the fifteen-day requirement constituted negligence per se, supporting damages payable to the buyer of $20 per day for loss of use of the vehicle while the dealer delayed in applying for title. Id. The court noted the dealer took no action to apply for title until spurred by entreaties from the buyer and the secured creditor. Id.
*629 With the foregoing background in mind, the Court returns to Iowa Code section 321.50(6) which controls the validity of security interests in vehicles. As previously noted, the certificate of title must be delivered to the county treasurer within 30 days for notation of a security interest in the vehicle. The thirty-day deadline for perfecting a security interest commences on the date of the creation of the security interest or the date of the issuance of the certificate of title, whichever is the latter.
McGrath failed to timely apply for an Iowa certificate of title, a delay which remains unexplained in the record. It may be, as in Forristall, that McGrath failed to take action until prodded by Debtor upon the expiration of the 45-day temporary tag. At all times McGrath was in control of the process. On February 14, 2000, Debtor signed a security agreement, the back of the Illinois title as purchaser, and an Iowa Application for title and registration. McGrath retained control over all these documents. It should have applied for the Iowa title within 15 days but failed to take any action for 46 days. The result is that Iowa title was not issued, or even applied for, for more than the 45 days allowed for a buyer to use temporary tags under section 321.25. This is in violation of Iowa law.

CONCLUSION
How to properly reconcile these conflicting provisions is the dilemma presented here. Initially, the Court notes that, in order to create consistent applications, the various provisions must be read together in a manner consistent with legislative intent. What is clear is that McGrath as dealer had 15 days from the time the vehicle came into Iowa (February 14, 2000 at the latest) within which to apply for title. Perfection of the security interest must be noted within thirty days thereafter. The legislative intent to create a 45-day window to accomplish these matters is apparent from the legislature's allowance of a temporary registration card which expires in 45 days. The legislature intended that 45 days would be the outside window for accomplishing all matters necessary to transfer title and perfect any security interests.
The arguments made concerning various methodologies for transfer of title and perfection of liens are ultimately irrelevant to a determination of the appropriate result. At all times, McGrath retained control over the applicable documents and had the ability to take them to the Treasurer's office for transfer and lien notation literally within hours. The reason for the delay from February 14 until March 31 in applying for title is unexplained. The reasons why McGrath elected to use the U.S. mails to further slow the process is also unexplained.
Triad, to succeed, must defend these delays even though McGrath was in violation of Iowa law. If Triad is to succeed, it must convince this Court that this violation is of no legal significance. This Court, however, concludes that the substantial delay is of consequence. The only logical way to reconcile these various provisions is to find that they allow a dealer 15 days within which to obtain a certificate of title and 30 days within which to note the lien, for a total of 45 days. This is consistent with other provisions of the Iowa Code. To hold otherwise would allow the dealer to delay acquisition of title indefinitely without penalty. This has not been the finding of the Iowa Supreme Court on similar issues. See Forristall, 551 N.W.2d at 618. To accept Triad's interpretation would also allow McGrath to not only place itself in violation of law without consequence, but also allow it to put the buyer in violation of *630 Iowa law through expiration of the temporary 45-day registration.
Finally, allowing no fixed date for acquisition of title would permit a dealer and financer to determine, between themselves, when they would note the lien. There is nothing in the Iowa laws or legislative history which even remotely implies such a result. Triad's lien was noted on the application for certificate of title Debtor signed on February 14. Triad is presumed to know the provision of the law affecting perfection of its lien. There is no showing in this record to indicate that Triad took any steps to accelerate transfer of title and protect its secured status.
As such, this Court concludes Triad's security interest is void and unenforceable because it was not timely filed under the Iowa Code. Although this result may seem harsh, Triad and McGrath had control of the process and are responsible for protecting their own interests.
WHEREFORE, the lien of Triad Financial Corporation on Debtor's 1996 Nissan Quest vehicle is void and unenforceable.
FURTHER, Trustee's Motion for Summary Judgment (as to Count II) is GRANTED.
FURTHER, Triad's Cross-Motion for Summary Judgment is DENIED.
FURTHER, Trustee's Motion to Strike Affidavit filed June 26, 2001 is denied for the reasons set forth herein.
NOTES
[1] This sentence was amended effective July 1, 2000, after the purchase in this case, by substituting the word "thirty" for "fifteen". Iowa Code § 321.25(2001).